## CHARLES MERRIAM vs. JOHN W. WOLCOTT & another.

An action lies to recover back money paid to a broker for a note, the signature to which is forged, sold by him without disclosing his principal, although he has paid the money to his principal, and although the note was sold for a sum less than its face.

CONTRACT against brokers to recover back money paid to them for two notes purporting to be signed by H. J. Libby & Co., payable to their own order, and indorsed by them.

At the trial in the superior court, it was agreed that the defendants received the notes for sale from E. O. Libby, who indorsed the same, they advancing to him three hundred dollars thereon, and on the same day sold them to the plaintiff without indorsing them, for $1406.80, which sum, deducting the three hundred dollars and their commissions, they paid over to E. O. Libby on the same day. The notes were sold for a price less than their face, equal to a discount of twelve per cent. per annum, for the time they had to run, to which was added one eighth of one per cent., which was equal to one half of the defendants' commissions. The plaintiff knew that the defendants acted as brokers in the transaction, but the name of their principal was not disclosed or asked for. The signatures of H. J. Libby & Co. were forged, but this fact was not known either to the defendants or the plaintiff till after the maturity of the notes. No assurance was given or asked for at the time of the sale, hat the signatures were genuine.

Upon these facts, judgment was rendered for the defendants, and the plaintiff appealed to this court.

*H. C. Hutchins*, for the plaintiff.

*J. G. Abbott,* for the defendants. 1. The defendants were agents, and known to be so. They did not refuse to give the name of their principal, and were not asked. They had paid to their principal the money received, before notice of the forgery. Under these circumstances, it would not be just and equitable to hold them liable, and so are the authorities. *Morrison* v. *Currie,* 4 Duer, 79. *Gray* v. *Otis,* 11 Verm. 628. 2. The plaintiff, by taking one half of the commissions, became a partner in the transaction, and took the risk upon himself. 3. The facts show a sale of the notes, and that the last indorser's name was genuine, that is, that all there was of the notes was rightfully transferred. They were not transferred in payment of a debt, or for money lent upon it, or discounted. The brokers sold them for what they were worth, with no warranty that the signatures were genuine. The price paid shows that the plaintiff assumed the risk. *Ellis* v. *Wild,* 6 Mass. 321. *Baxter* v. *Duren,* 29 Maine, 434. *Fenn* v. *Harrison,* 3 T. R. 757. *Bank of England* v. *Newman,* 1 Ld. Raym. 442. *Emly* v. *Lye,* 15 East, 7. *Fydell* v. *Clark,* 1 Esp. R. 447. *Ex parte Shuttleworth,* 3 Ves. Jr. 368. *Ex parte Blackburne,* 10 Ves. 204.

CHAPMAN, J. The first question presented by this case is, whether a person who purchases a note of a broker for cash, and takes the note by delivery, can recover back the money paid, if the maker's signature turns out to be forged. The text books state the law to be that he can recover it back on the ground of an implied warranty that the note is in reality what it purports to be. Bayley on Bills, 148. Chitty on Bills, (10th Amer. ed.) 245. The English cases are referred to in these treatises. The recent case of *Gurney* v. *Womersley,* 4 El. & Bl. 132, asserts the same doctrine. It has been repeatedly so held in New York. *Markle* v. *Hatfield,* 2 Johns. 455. *Herrick* v. *Whitney,* 15 Johns. 240. *Shaver* v. *Ehle,* 16 Johns. 201. *Murray* v. *Judah,* 6 Cow 484. *Canal Bank* v. *Bank of Albany,* 1 Hill, (N. Y.) 278. It i so held in Rhode Island. *Aldrich* v. *Jackson,* 5 R. I. 218. Also in Vermont. *Thrall* v. *Newell,* 19 Verm. 202. But there are two cases which state a distinction in respect to this implied warranty that is not recognized in the other cases. The first is

*Ellis* v. *Wild*, 6 Mass. 321. The plaintiff had purchased of the defendant two promissory notes, both of which, without the knowledge of either party, had forged indorsements. They were taken in payment for a quantity of rum. The court held that if it was the original intent of the plaintiff to buy the notes and to make payment in rum, the defendant was not liable; but if the payment by the notes was not a part of the original stipulation, but an accommodation to the defendant, then he was liable on the ground that he had not paid for the rum. Some early English cases are referred to as authorities for this distinction. The other case is *Baxter* v. *Duren*, 29 Maine, 434, and it states the same doctrine.

If this is the law of this commonwealth, then the plaintiff cannot recover; for he bought the notes for cash, and did not take them in payment of a debt. But it is difficult to see any valid reason for such a distinction. Whether the purchaser pays cash or discharges a debt in payment for the forged paper, the injury is the same to him. There is in both cases a failure of consideration growing out of a mistake of facts. The actual contract and the implied understanding as to the genuineness of the note is in both cases the same. And we think that the authorities which hold the seller to an implied warranty, in such case, that the note is genuine, are in conformity with the principles of sound reason and justice, and with the understanding of the parties in making such a contract. In *Cabot Bank* v. *Morton*, 4 Gray, 156, the case of *Ellis* v. *Wild* is not noticed; but it is held that one who gets a note discounted at a bank without indorsing it impliedly warrants that its signatures are genuine. The two cases are therefore contradictory. The doctrine held in *Lobdell* v. *Baker*, 1 Met. 193, in effect goes beyond any of the cases cited. The note sold was indorsed by a minor. It was held that upon the sale there was an implied warranty that the indorsement was by a person capable of binding himself by a valid contract. A warranty which goes to that extent includes the idea that there is a genuine signature. In that case the note was not sold to pay a debt, but for cash, and that point was not regarded as material.

2. Another question raised is, whether the fact that the defendant made the sale as a broker, but without disclosing the name of his principal, relieves him from his liability. The authorities establish his liability as principal. 2 Kent Com. (6th ed.) 630. *Gurney* v. *Womersley, Canal Bank* v. *Bank of Albany, Cabot Bank* v. *Morton, ubi supra.*

3. A third question is, whether he is relieved from his liability by the fact that he had paid over the money to his principal before it was demanded by the plaintiff. We think he is not, there having been no unreasonable delay in giving him notice of the forgery after it was discovered. *Canal Bank* v. *Bank of Albany, ubi supra. Fuller* v. *Smith,* Ry. & Mood. 49.

And we think the deduction made to the purchaser of the notes does not alter the nature of the transaction. It did not, as the defendants contend, create a partnership in the commissions, but merely fixed the amount to be paid for the notes.

*Judgment for the plaintiff.*